United States District Court
Southern District of Texas
**ENTERED**
December 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE ORION MARINE | § | |
| CONSTRUCTION, INC. AS OWNER | § | |
| AND/OR OWNER PRO HAC VICE | § | |
| OF THE DREDGE "WAYMON L | § | CIVIL ACTION NO. 3:20-CV-00309 |
| BOYD AND SEVERAL VESSLES | § | |
| WORKING IN A FLOTILLA WITH | § | |
| THE WAYMON L BOYD" | § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

Pending before me are two motions to transfer venue under 28 U.S.C. § 1404. *See* Dkts. 8, 9. One motion is filed by Joel Rivera Deleon's family and next of kin and the other is filed by Arturo A. Cavazos's family and next of kin (collectively, "Movants"). Both motions ask me to transfer this limitation action from the Galveston Division to the Corpus Christi Division in the Southern District of Texas. Having reviewed the motions, the responsive briefing, and the applicable law, I recommend that the motions to transfer venue be **GRANTED**, and that this case be **TRANSFERRED** to the Corpus Christi Division.

## BACKGROUND

Because the pending motions seek to transfer this action between two divisions in the Southern District of Texas, it is worth highlighting that the Southern District of Texas is one of the largest districts in the nation—both in terms of population size and land mass. The Southern District of Texas represents 43 counties, covers 44,000 square miles, and includes almost 8.6 million people. It is comprised of seven divisions—Brownsville,

Corpus Christi, Galveston, Houston, Laredo, McAllen, and Victoria.  The facts underlying the present dispute implicate all seven divisions except for one—the Laredo Division.

Orion Marine Construction, Inc. ("Orion") provides civil marine construction services throughout North America.  Its primary dredging operations are based out of Port Lavaca, Texas, a region served by the Victoria Division.  EPIC Crude Terminal Company, L.P. ("EPIC") contracted with Orion to obtain dredging services for its marine terminal in the Tule Lake Channel, a waterway that feeds into the Corpus Christi Bay.  Orion's hydraulic cutterhead dredge, the Waymon L. Boyd (the "Dredge"), worked alongside 10 other vessels in a dredging flotilla to complete the work requested by EPIC.

On August 21, 2020, a pipeline carrying propane gas "was breached during the dredging operation, resulting in a catastrophic explosion and fire" that claimed the lives of four people and caused injuries to others working on or near the Dredge that day.  Dkt. 8 at 3.  The accident occurred at the EPIC Marine Terminal in the Corpus Christi Division.  Enterprise Products Operating, LLC ("Enterprise") operated the ruptured pipeline from its pipeline control center in the Houston Division.  Two of the deceased, Jose Coca-Avalos and Rafael Garza Espinosa, lived within the Galveston Division.  The two other deceased individuals, Joel Rivera Deleon and Arturo A. Cavazos, lived in Hidalgo County within the McAllen Division.  Of the 14 other employees working on the dredging project that day, one individual resides in the Victoria Division, and the remaining employees live in the Rio Grande Valley in South Texas, a region served by either the McAllen Division or the Brownsville Division.

After the explosion, Captain E.J. Gaynor of the United States Coast Guard, Air Station Corpus Christi, ordered Orion to "mark the [sunken] vessel with a lighted buoy marker," secure the vessel to ensure it didn't drift out of place, "to submit a comprehensive salvage plan for approval," and a "comprehensive vessel transit plan."  Dkt. 8-8 at 2. Recovery operations for the Dredge commenced on September 11, 2020, and seventeen days later the Dredge was transported to San Leon, Texas, which is within the Galveston Division.  The Dredge, still drydocked in San Leon, is currently under the exclusive control of the National Transportation Safety Board ("NTSB").   Once NTSB finishes its investigation, Orion intends to transport the Dredge to drydocks located in Orange, Texas, within the Beaumont Division of the Eastern District of Texas.  The pipeline, also under federal control, is undergoing metallurgical analysis in Washington, D.C.  On October 15, 2020, the NTSB informed Orion that "the vessel, cutterhead, pipe segment, and all associated evidence . . . may not be observed, inspected, examined, photographed, touched, moved, altered or otherwise disturbed by anyone without express prior authorization by the NTSB." Dkt. 28-4 at 2.  So far, NTSB has been unwilling to permit anyone to examine the Dredge or the relevant piece of pipeline.

Within days of the incident, Orion faced personal injury lawsuits in Texas state court in both Nueces County (Corpus Christi Division) and Harris County (Houston Division). There are currently seven lawsuits pending—three cases that have been removed to federal court in the Corpus Christi Division and four lawsuits that remain in state court in Harris County.  The Movants filed two of the lawsuits that have been removed to federal court in the Corpus Christi Division.

On October 5, 2020, Orion filed this limitation of liability action under Rule F of the Supplemental Rules of Civil Procedure for Certain Admiralty and Maritime Claims. Having voluntarily chosen to drydock the Dredge in San Leon, Orion filed its limitation action in the Galveston Division. The Movants have requested that I transfer this case to the Corpus Christi Division where their wrongful death actions are currently pending.

## LEGAL STANDARD

The Limitation of Liability Act of 1851, 46 U.S.C. § 30501 *et seq.* "allows a vessel owner to limit its liability for damage or injury . . . [by] establish[ing] a limited fund equal to the value of the vessel and consolidate[ing] all potential claims before one federal district court." *In re Marquette Transp. Co. Gulf-Inland, LLC*, No. 3:18-cv-00074, 2018 WL 4443141, at *2 (S.D. Tex. Sept. 4, 2018). After a vessel owner has filed a limitation complaint, the district court may transfer the case "[f]or the convenience of the parties and witnesses, [and] in the interest of justice." FED. R. CIV. P. SUPP. R. F(9). "The Rule F(9) transfer provision is similar to and analyzed under the same framework as the general transfer provision found under 28 U.S.C. § 1404(a)." *In re Marquette*, 2018 WL 4443141, at *2. *See also In re NGL Marine, LLC*, No. 4:20-cv-01841, 2020 WL 3000757, at *1 (S.D. Tex. June 4, 2020) ("Change of venue in admiralty cases, like ordinary civil actions, is governed by 28 U.S.C. § 1404(a).") (quotation omitted).

Although district courts enjoy "broad discretion in deciding whether to order a transfer" under § 1404(a),[1] a two-step analysis provides guidance for properly exercising

---

[1] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) ("*In re Volkswagen II*") (quotation omitted).

that discretion.  *See Hillestad v. LLOG Expl. Co.*, No. 3:17-cv-00341, 2018 WL 4938708, at *1 (S.D. Tex. Sept. 20, 2018).  First, the district court must consider "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").  Second, a court must consider "both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case."  *In re NGL Marine*, 2020 WL 3000757, at *1.  The plaintiff's choice of forum prevails unless the "movant show[s] the transferee venue is clearly more convenient."  *Mata v. Freeport McMoran Inc.*, No. 3:15-cv-00155, 2016 WL 6037237, at *2 n.2 (S.D. Tex. Oct. 14, 2016) (internal quotation marks omitted).  "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under [the general venue statute] by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *In re Volkswagen II*, 545 F.3d at 313.

## ANALYSIS

The first issue before the Court is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen I*, 371 F.3d at 203.  Rule F(9), which governs the proper venue for a limitation proceeding, provides that "[t]he complaint shall be filed in any district in which the vessel has been attached or arrested . . . or if the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim."  FED. R. CIV. P. SUPP. R. F(9).  Like the general venue statute codified at 28 U.S.C. § 1391, Rule

F(9) "is based on districts, not divisions." *Perry v. Autocraft Invs., Inc.*, No. 4:13-cv-01959, 2013 WL 3338580, at *2 (S.D. Tex. July 2, 2013).

The parties dispute whether and where the Dredge was arrested. But it is undisputed that Orion is the defendant in seven different lawsuits all filed within the Southern District of Texas. Therefore, the Southern District of Texas, which contains both the Galveston Division and the Corpus Christi Division, is an undisputed proper venue for this lawsuit. *See id.* at *2 ("If venue is proper in Galveston, it is also proper in [Corpus Christi]."). Having cleared the first hurdle to transfer, the Movants must now show that the private and public interest factors favor transfer to the Corpus Christi Division.

## A.   PRIVATE INTEREST FACTORS

The private interest factors include "1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Hillestad*, 2018 WL 4938708, at *2. In the analysis that follows, I find that factor 2 clearly favors transfer, factors 1 and 3 slightly favor transfer, and factor 4 is neutral. None of the private interest factors support retaining this case in the Galveston Division.

### 1.  Relative Ease of Access to Sources of Proof

"The first [private interest] factor focuses on the location of the relevant 'documents and physical evidence' relative to the transferee and transferor venues." *Equal Emp. Opportunity Comm'n v. Faurecia Auto. Seating, LLC*, No. 4:16-cv-199-DMB-JMV, 2017 WL 4158624, at *3 (N.D. Miss. Sept. 19, 2017) (quotation omitted). While the Fifth

6

Circuit has explained that technological developments in electronic data storage and document sharing do not render this factor "superfluous," *In re Volkswagen II*, 545 F.3d at 316, more recent district court decisions have expressed some doubt. *See Dufort v. Aqueos Corp.*, No. 20-345, 2020 WL 1953949, at *2–3 (E.D. La. Apr. 23, 2020) (finding that factor one did not favor transfer where the only relevant evidence available in the transferee forum were documents, which were electronically available); *Pruitt v. Bruce Oakley, Inc.*, No. 18-8621, 2019 WL 2437182, at *4 (E.D. La. June 11, 2019) ("advances in technology for document copying and storage makes ease of access to sources of proof a near non-issue"); *Healthpoint, Ltd. v. Derma Scis., Inc.*, 939 F. Supp. 2d 680, 687–88 (W.D. Tex. 2013) (finding that factor one did not weigh against transfer where documents were stored abroad, were electronically available, and defendant failed to show easier access in one venue over another).

This dispute arises from a breached propane pipeline that burst and caused injuries to Orion's employees working aboard a vessel conducting dredging services at EPIC's Marine Terminal in Corpus Christi. Movants argue that "material documents associated with this project, the incident and investigation are overwhelmingly located in Corpus Christi." Dkt. 8 at 8. They claim that EPIC has an office in Corpus Christi, and that the surveys and design drawings for the EPIC Marine Terminal are located there as well. They further allege that "material facilities such as the Marine Terminal, the Port and pipeline operations" and "[t]he physical evidence including real property" are located in Nueces County under the auspices of the Corpus Christi Division. *Id.* Although Movants do not

bring this up, Orion admits that "two booster barges" from the dredging flotilla "are still located in Corpus Christi." Dkt. 28 at 16.

Orion believes that Movants failed to meet their burden because Orion's documents "are located in either Houston or Port Lavaca" and that Orion's surveys and design drawings are located in either Port Lavaca or Tampa, Florida. Dkt. 28 at 22. Orion contends that EPIC's headquarters are in San Antonio, in the Western District of Texas, not Corpus Christi—although Orion readily admits that "the EPIC terminal where the incident occurred is in Corpus Christi." *Id.* at 17. As for the pipeline, Enterprise maintains its electronic documentation on servers at its Houston office, and the pipeline itself is currently in Washington, DC. Orion also argues that the Dredge itself is currently in the Galveston Division under the exclusive control of the NTSB. But Orion admits that, once NTSB relinquishes control, the Dredge will be moved to Orange, Texas, in the Beaumont Division of the Eastern District of Texas.

All of this leads me to conclude that this factor slightly favors transfer to the Corpus Christi Division. Movants have shown that the Corpus Christi Division has greater access to the physical evidence—including the EPIC Marine Terminal where the accident occurred—than the Galveston Division. This is not surprising because Corpus Christi is the locale of the accident, and Galveston has virtually no connection to this case. Additionally, some of the relevant documents are unquestionably found in the Corpus Christi Division. Orion also admits that its dredging operations are managed from its Port Lavaca office, and some relevant documents can be found there. Port Lavaca is 50 miles closer to Corpus Christi than it is to Galveston. Importantly, there is absolutely no

documentary or physical evidence currently available for inspection in the Galveston Division. None. As Orion is quick to admit, no one can access the Dredge while it is in Galveston, and once it becomes accessible, Orion plans to move it to a different judicial district. All told, this factor slightly favors transfer to the Corpus Christi Division.

## 2. Compulsory Process to Secure the Attendance of Unwilling Witnesses

The second private interest factor examines the availability of compulsory process over witnesses. The Federal Rules of Civil Procedure provide district courts with the authority to compel non-party witnesses "to attend a trial, hearing, or deposition" that is conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A).[2] "This factor will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *E. Tex. Boot Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017 WL 2859065, at *3 (E.D. Tex. Feb. 15, 2017) (quotation omitted). *See also Clark v. Am. Airlines, Inc.*, No. 3:19-CV-00097-L-BH, 2019 WL 3006545, at *3 (N.D. Tex. July 9, 2019) ("The second private interest factor . . . favors transfer when a transferee district has absolute subpoena power over a greater number of non-party witnesses.").

The Movants have identified numerous non-party witnesses that reside, work, or regularly transact business in the Corpus Christi Division and are beyond 100 miles from

---

[2] As far as party witnesses are concerned, courts can compel attendance at trials, hearings, or depositions "within the state where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(B). In this case, the availability of compulsory process for party witnesses is a non-issue because all party witnesses are located in the State of Texas, and both the Galveston Division and Corpus Christi Division are obviously located in the State of Texas.

the historic Galveston federal courthouse.  These non-party witnesses primarily performed

emergency response services on the date of the accident.  Among the nonparty witnesses

Movants identify are employees of the Port of Corpus Christi, the Refinery Terminal Fire

Company, and the "first responders who responded, treated and recovered the men" who

were injured or died as a result of the explosion.  Dkt. 8 at 11–12.  Meanwhile, Orion has

failed to identify a single non-party witness that resides, is employed, or regularly transacts

business within 100 miles of the Galveston Division.  If this case remains in the Galveston

Division, the non-party witnesses who reside within the Corpus Christi Division will be

outside the court's subpoena power.  Neither party could require these witnesses to attend

trial.  This factor weighs in favor of a transfer to the Corpus Christi Division.

### 3. Cost of Attendance for Willing Witnesses

The third private interest factor, which is "probably the single most important factor

in the transfer analysis," considers the cost of attendance for willing witnesses.  *Sandbox

Logistics LLC v. Grit Energy Sols. LLC*, No. 3:16-CV-12, 2016 WL 4400312, at *5 (S.D.

Tex. Aug. 17, 2016) (quotation omitted).  As the District Court explained in *Sandbox

Logistics*:

> The inconvenience to witnesses increases with the additional distance to be
> traveled, including additional travel time, meal, lodging expenses, and time
> away from their regular employment.  The Court must also consider the
> personal costs associated with being away from work, family, and
> community.

*Id.* (citation omitted).  "[I]t is the convenience of non-party witnesses, rather than that of

party witnesses, that is the more important factor and is accorded greater weight in a

transfer of venue analysis."  *State St. Cap. Corp. v. Dente*, 855 F. Supp. 192, 198 (S.D.

Tex. 1994) (collecting cases).  The distance between a non-party's residence and the court where the witness will be called to testify serves as a proxy for convenience in this analysis.  *See Hillestad*, 2018 WL 4938708, at *4.  The convenience of one key witness may outweigh the convenience of numerous less important witnesses.  *See Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399, 401–02 (N.D. Tex. 1984).  "To designate a potential witness as 'key' under the inquiry, the movant must specifically identify the key witnesses and outline the substance of their testimony."  *Faurecia Auto. Seating*, 2017 WL 4158624, at *5 (cleaned up).

Neither party has identified key non-party witnesses who are *willing* to testify, outlined the substance of their testimony, or identified where they reside.  As I explained in *Hillestad*, "the mere location of the non-parties' workplace, without more, is simply insufficient to demonstrate that a transfer from the Galveston Division to the [Corpus Christi] Division would be more convenient to the non-parties."  2018 WL 4938708, at *4.  Although the Movants allege that many of the crew members live in the Rio Grande Valley, which is closer to Corpus Christi than Galveston, those individuals are party witnesses because they are named plaintiffs in the underlying personal injury actions and/or Orion employees.  Because the Movants have failed to sufficiently allege the inconvenience of any non-party witnesses, this factor "is entitled to very little weight."  *Id.* at *6.  All the same, nothing suggests that retaining this case in the Galveston Division would be convenient for non-party witnesses.[3]  From my review of the papers submitted by the

---

[3] Although it is true that two of the crew members aboard the Dredge resided in Galveston County, this is of absolutely no significance to the transfer analysis.  Both of those crew members died as

parties, the only non-party witnesses who might possibly be called to testify at trial are medical service personnel who provided medical care to the injured crew members in San Antonio, Texas.  Although I cannot say for certain where these individuals reside, I note that San Antonio is 143 miles from Corpus Christi and 247 miles from Galveston.  I simply cannot fathom how the Galveston Division could possibly be more convenient than the Corpus Christi Division for these non-party witnesses.  In the event they are willing witnesses, this factor slightly favors transfer to the Corpus Christi Division.

### 4.  Other Practical Problems

The fourth private interest factor courts should consider on a § 1404(a) motion to transfer is "all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen I*, 371 F.3d at 203.  The Fifth Circuit has clarified that "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer."  *In re Radmax*, 720 F.3d 285, 289 (5th Cir. 2013).

The Movants argue that transfer to the Corpus Christi Division "where three suits are currently pending" is appropriate because it would help to "avoid inconsistent adjudication of common legal issues" and would "expedite the resolution and eliminate unnecessary repetition and confusion among the various parties."  Dkt. 8 at 13.  Orion claims that this argument is a red herring "because an injunction will be issued in this limitation action staying the further prosecution of claims brought against Orion."  Dkt. 28 at 27.  While Orion may be correct, this does not suggest that maintaining cases in two

---

a result of the explosion and would be unable to testify no matter which division takes control of the case.

different divisions would be an efficient use of resources.  In fact, as Orion points out, there are already four cases pending in Harris County.  Adding Galveston into the mix makes a bad situation worse.  So, while this factor may not favor transfer, it certainly does not favor retention.  At worst, then, this factor is neutral.

## B.   Public Interest Factors

The public interest factors include "1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Hillestad*, 2018 WL 4938708, at *2.  As discussed below, I find that factor 2 clearly favors transfer, and factors 1, 3, and 4 are neutral.

### 1.   Administrative Difficulties Flowing from Court Congestion

The first public-interest factor asks, "not whether transfer will reduce a court's congestion, but whether a trial may be speedier in another court because of its less crowded docket." *Hillestad*, 2018 WL 4938708, at *7 (cleaned up).  Movants argue that this factor favors transfer because "three separate related matters are already pending in the Corpus Christi Division." Dkt. 8 at 14.  Although there are, indeed, three related matters currently pending in the Corpus Christi Division, I am at a loss to understand why trial would be speedier in the Corpus Christi Division as opposed to the Galveston Division.  This factor is neutral.

## 2.  Local Interest in Having Localized Disputes Decided at Home

This public interest factor considers whether the dispute at issue has a closer "factual connection" with the transferee or the transferor venue.  *In re Volkswagen I*, 371 F.3d at 206.  "This factor generally favors the venue where the acts giving rise to the lawsuit occurred."  *Metromedia Steakhouses Co., L.P. v. BMJ Foods P.R., Inc.*, No. 3:07-cv-2042-D, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008).  Here, a dredging operation in the Corpus Christi Bay accidently hit a pipeline, resulting in a catastrophic explosion, fire, and loss of life.  It is easily understandable why the residents of the Corpus Christi Division would have a genuine, localized interest in hearing a dispute concerning a dredging operation gone awry in the local waterways.

Orion agrees that the local interest factor considers where the conduct at issue took place, but suggests that the dredging in Corpus Christi represents an exceedingly small fraction of the conduct giving rise to the present dispute.  For example, Orion contends (1) that "the Dredge was managed from the Port Lavaca office;" (2) "Orion's overall operations are managed from Houston;" and (3) "the pipeline was controlled from the Enterprise Pipeline Control Center in Houston."  Dkt. 28 at 29.  Even these considerations, though, fail to explain why the Galveston Division might have any interest, let alone a greater interest, in deciding this dispute.

According to Orion, venue is no more appropriate in Corpus Christi than Galveston because the dispute involves a dredge and a pipeline, neither of which are unique to Corpus Christi.  Galveston has pipelines and dredging operations, Orion says, appearing to suggest that any place with a pipeline, or any place in which dredging takes place, would have a

14

localized interest in hearing and deciding this action.  I wholeheartedly disagree.  Adopting Orion's analysis would render this § 1404 factor meaningless.   The Fifth Circuit has likewise expressly rejected such an argument.  *See In re Volkswagen II*, 545 F.3d at 318 ("[T]he district court's provided rationale—that the citizens of Marshall have an interest in this product liability case because the product is available in Marshall, and that for this reason jury duty would be no burden—stretches logic in a manner that eviscerates the public interest that this factor attempts to capture.").  The Fifth Circuit went on to explain that such a rationale "leaves no room for consideration of those actually affected—directly and indirectly—by the controversies and events giving rise to a case."  *Id.*  This factor clearly favors transfer to the Corpus Christi Division.[4]

### 3.  Familiarity of the Forum with the Law that will Govern the Case

Both this Court and the Corpus Christi Division are located in major ports along the Texas Gulf Coast.  Both courts are quite familiar with both Texas and maritime law, and both are equally capable of presiding over this dispute.  This factor is neutral.

### 4.  Avoidance of Conflict of Laws or in Application of Foreign Law

The last factor asks whether transferring the case would raise any "unnecessary problems in conflict of laws, or in the application of foreign law."  *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 776 (5th Cir. 2016) (quotation omitted).  Because this motion

---

[4] Orion cites to a patent litigation case in support of its argument.  *See* Dkt. 28 at 30 n.100 (citing *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 872 (E.D. Tex. 2012)).  In that case, the district court found this factor neutral because, while the allegedly infringing product was manufactured in the transferee district, it was developed and sold in the transferor district.  *See id*.  Orion has pointed to nothing that puts the Galveston Division's interest on par with the Corpus Christi Division's interest.

considers an intra-district transfer, both this Court and the Corpus Christi Division are equally positioned to preside over this dispute.  This factor is neutral.

## CONCLUSION

I find that the private and public factors weigh in favor of transferring this case to the Corpus Christi Division.  Four of the factors favor transfer (two strongly; two slightly), four are neutral, and none favor retaining this case in the Galveston Division.  The Fifth Circuit has warned district courts to be "fully aware of the inadvisability of denying transfer where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum."  *In re Radmax*, 720 F.3d at 290 (footnote omitted).  That is precisely the case here.  Movants have satisfied their burden of establishing that Corpus Christi is "clearly more convenient."  *In re Volkswagen II*, 545 F.3d at 315.

For the reasons identified above, I recommend that the motions to transfer venue under 28 U.S.C. § 1404 (Dkts. 8, 9) be **GRANTED** and this case **TRANSFERRED** to the United States District Court for the Southern District of Texas—Corpus Christi Division.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED on this 21st day of December 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE